Good morning, Your Honors. Tatyana Edwards on behalf of Mr. Fedunyak, the petitioner. You want to stand a little closer so the mic can pick up your voice. Okay. Thank you. Probably just jumping right to it for me, I have problems with what exactly... I think you claim you rely on DSIR. That's correct. And in DSIR the Haitian government operated as a kleptocracy, or government by thievery enforced by the Tom-Tom Makutas. How do we accept your argument that DSIR is on point when there's no evidence of a kleptocracy government in the Ukraine? Your Honors, I believe that the record compels that... What evidence is there in the record of a kleptocracy in the Ukraine? Okay. First of all, the testimony of Mr. Fedunyak himself. There is no direct evidence of kleptocracy, but I believe there is sufficient circumstantial evidence that when Mr. Fedunyak was targeted as a victim for extortion and bribes by the government officials and later he was harmed due to his defiance to pay the bribes, I believe there is sufficient circumstantial evidence that the number of complaints that he filed went through the hierarchy of the government structure and the complaints that he filed against certain government officials at the lower levels of the government to the higher level officials, they returned directly to the same people that he complained about. And in addition to that, Your Honors, there is sufficient circumstantial evidence, for example, in the administrative record on cross-examination, Mr. Fedunyak testified that he was asked to pay in United States dollars, not in Ukrainian hryvnias, the currency that is not normally, and should not be normally accepted by the government officials if it's a legitimate payment of a certain tax or any other licensing fee. It is important because it is a circumstantial evidence of the intent by the government officials to take the bribe. But is it enough if it's the government official who is corrupt or does it depend on showing that more than just one or two or three lower level government officials are extorting Mr. Fedunyak as opposed to it being a government policy, which was the case in the Haitian situation? Your Honors, I believe there is sufficient evidence in the record presented by the official Department of State reports. And I can give Your Honors the exact pages in the administrative record that shows that at the time when Mr. Fedunyak in 1998-1997 up through the time that he left in 2000, the Ukrainian economy was going through a very difficult economic transition because the country itself was undergoing the political transition, the change in political structure following the collapse of the Soviet Union. And the record is replete of such evidence in the official government reports that plutocracy in Ukraine should be recognized by this court as it was in the 2005 opinion of Zagayda as the example of the institutionalized corruption. For example, I can cite pages 194, 195, 2005, 2007, 226, 227, and all these pages will show to this court that Ukraine to no less degree than Haiti in the desert case was an excellent example of the institutionalized corruption of plutocracy. And as such, it presented the context to show that any type of retaliation by the government to Mr. Fedunyak's defiance to pay the government bribes was a clear example of the political opinion. Well, this political opinion you're arguing is that he's a subversive because he's obviously not some religion or he's not something along those lines, right? That's correct, ma'am. You also challenged the agency's discretionary denial of asylum for the first time on appeal. Haven't you waived that? Well, Your Honor, I did not represent Mr. Fedunyak in the proceedings. Is it waived or not waived? I believe, Your Honor, there was sufficient inference by his first counsel, Mr. Shank, in the notice of appeal to bring the discretionary nature of the asylum claim into the jurisdiction of this court. Mr. Shank mentioned the requisite sections of the law, Section 208 specifically, as well as he mentioned the fact that the judge clearly abused the discretion by not applying the correct law to the facts. One thing that's kind of unusual about this case is that your client received relief under CAT, and usually if you lose on the first prong, then the second just falls. What does this mean in terms of his right to remain here? Your Honor, I believe this is a further proof that the judge acknowledged that it is more likely than not that Mr. Fedunyak will be persecuted in Ukraine upon his return based on... Except for, okay, but his problem wasn't that he wasn't persecuted. His problem was that the judge didn't find that there was a link, that it was thugs, essentially, or, you know, extortion. So they're not entirely, you know, that's not entirely inconsistent. Yes, Your Honor, the only missing link, so to speak, is the nexus. The judge did not see the correlation between the persecution and the political opinion or imputed political opinion on Mr. Fedunyak. So what I'm asking you is the fact that he got CAT relief, does that just mean he can stay here until things get better? That he can't file for adjustment of status, is that... That's correct, Your Honor, yes, he cannot file for adjustment of status. But what we are trying to argue is that the judge incorrectly analyzed the claim because for some reason he ignored the political changes in Ukraine, and he did not give it enough, you know, analytical posture, so to speak. He can agree with you, that's for sure, but that doesn't... And I believe... And, you know, I'm finding it hard to say that he ignored it when he was able to distinguish between the asylum and the CAT here, and correctly said that this is what's missing here, the political imputation. I must admit, Your Honor, that Mr. Fedunyak was not particularly forthcoming in explaining that his actions constituted the expression of political opinion. However, I believe there is enough circumstantial evidence in the record to compel the finding of persecution on account of political opinion or imputed political opinion. And I also would like to add that Mr. Fedunyak's actions as a whistleblower, when he made not one, not two, but five separate complaints, going, you know, up against very difficult odds, the letter of the government hierarchy up to the level of the Supreme Soviet Deputy, which is analogous to the United States Congressman or even the Senator. So the government is incorrect in their brief, arguing that only the low-level government figures were involved, but because the record compels the finding that Mr. Fedunyak appealed to the highest level of government authority and still did not find any redress and still was penalized, and the timing, I might add, as well as the disproportionate nature of the harm he received versus the small amounts of bribes that he was asked to pay based on the existing precedents in the circuit, I believe compel the finding that his actions, his defiance, his whistleblowing activities were nothing but the expression of political opinion. Okay. You've gone a little bit over time. I'll give you a minute on rebuttal if you need it, and we'll hear from the government. Thank you. Thank you. Again, Surrell Brady, representing respondent. The issue is that the types of crimes of which Mr. Fedunyak complains by two or three local officials and the violence related to those crimes is not what is meant within the case law or the statute as persecution on the grounds of political opinion. The extortion money Can we just break that down because the country report does talk about these gangs in concert frequently with government officials who are going around preying upon the citizens, and it says often there may be occasions when the ethnic, religious, or political affiliations are related to criminal activity, but we have identified no pattern of mistreatment at the hands of criminal groups based on these affiliations. So there's no doubt that the country report supports and apparently There's no doubt that the country report supports the notion that the government officials are involved in the corruption as a general country matter, and there seems to be no doubt that there were government officials being low level or whatever. The cop on the beat in Los Angeles is very low level, but they're the ones that inflict the harm if there's a claim of excessive force. So I'm not sure the level of the political involvement is relevant other than to maybe going up the chain and showing a kleptocracy. But I'm not talking about going up the chain. I'm talking about political involvement of the persecutors. So we have, as I understand it in this case, we do have that part of the equation, that the government is involved. And then the question is, as I think you're posing, are they doing it to Mr. Fidunyak because he has any imputed political viewpoints or that there's any religious or ethnic? And what they're focused on is coming under the political prong, as I understand it, because what he was doing was fighting back against the government by going up the chain of command to, as she says, what in our country would be the equivalent of a U.S. senator. Now why wouldn't that, taking what that argument is on its face, why wouldn't that be sufficient to create a political aspect to what he's doing? He's fighting back, he's blowing the whistle on the government and attempting to go up the chain to, in our country, getting to a senator would be a fairly big deal. For several reasons, Your Honor. Well, by definition, corruption involves a government official, whether he be high level or low level. Nonetheless, for asylum, he has to demonstrate that the corruption went to the heart of government operations. The case law makes distinctions, and it explicitly says that the corruption has to be, I think in one instance, it was inextricably intertwined with government operations. It must be widespread corruption. And I think the cases are walking the line trying to distinguish between corruption in an instance of just criminality by individuals who happen to be government officials and that which is so pervasive in a society such as in Haiti and Daseer that we're going to find that a person is actually being persecuted by the government through means of corruption. So I think there is that distinction in the case law. And understanding that asylum is to protect against extreme circumstances, I don't think that distinction is unreasonable or hard to understand. I think that goes to what I was trying to set aside, though, at least in my mind there was. Yes, accepting that just the average Joe civilian who is being ripped off and does nothing more except pay the bribes to the government officials. But in this case, there was more. Now I'm shifting to the protected ground. And why isn't there enough of the political oppression that is he's being persecuted and there on his side of the equation is there is a political element to his activity because he's trying to blow the whistle on these local officials? Because the record created by Mr. Fiduniak himself refutes that. He stated very candidly and honestly that when he didn't pay, the car registration person, and then secondly didn't pay the tax bureaucrat, he was beaten. In each instance his assailants said it was because he didn't pay and because he still owed a debt. You're still not answering my question. He's gone up the chain. Do you accept that this communist official or the Ukrainian official was the equivalent of a U.S. senator in the United States? For purpose of the argument, I certainly will. I have no basis on which to challenge it. Okay. Now, if this took place in the United States and the person was going up and complaining that the incumbent government, local or state or wherever the level of corruption is being endorsed, and it's a partisan government, which clearly it is in Ukraine, and he's complaining against that government, why doesn't then that take on an aspect of political activity? He is not just paying the bribe. He's also complaining and blowing the whistle publicly. Because he said he complained that the two individuals, and he named them in his letters up the chain, were asking for money from him that he could not pay. He was not saying that the entire system of government industry is so pervasively corrupt that citizens are always at risk. He did not say that. And the case law, though, on the contrary, in those cases in which they have found corruption or corruption constituting persecution or whistleblowing, it has been that, that it was a pervasive system of government. And the individual who was blowing the whistle was complaining about that pervasive system. But here the individuals who were asking for the money were certainly lower level, admittedly, but were government officials. They absolutely were. But the question is, why were they shaking Mr. Fiduniak down? And why then did they send goons to beat him up? It was because they wanted money to line their pockets. In both interviews he had with the people doing the shakedowns, they said to him, Mr. Fiduniak, you have to share. Because he had successful businesses. Share with them. And they may have been misusing governmental authority, but they were in essence using governmental authority to extort the money out of this individual. They were, but the question has to be, though, also whether they imputed a political opinion to Mr. Fiduniak. And the evidence is clear that what they imputed to Mr. Fiduniak was that he either could not or was not willing to pay them the bribe, the corruption money. And there is no link. In fact, the fact that higher-level officials or someone on the level of a congressman or senator sends a report, receives a report of corruption or wrongdoing, he sends it back down the chain, perhaps completely unversed in the local situation, he's assuming in good faith that the local officials will handle it. And because of the way Mr. Fiduniak wrote his complaints, that two specific individuals were demanding money from him, that wouldn't be unreasonable, but it certainly doesn't lead to the conclusion that the Ukrainian government should be seen as corrupt, either then or now. Well, I guess if I'm understanding your argument, you're saying that, I mean, the kleptocracy obviously would be a basis for that. But you're saying that based on the evidence in this case, it doesn't compel finding that, even though there are government officials involved, and, you know, he does get beat up when he doesn't, and they do seem to be using in some way their color of authority. So, but you're saying in this situation it doesn't compel finding a kleptocracy? Because there's another explanation, and your explanation is that they just, you know, he wasn't paying the money, he wasn't sharing, and he wasn't complaining about, he was complaining about paying $100 or $200 or whatever he had to pay. That's correct. That it doesn't prove a kleptocracy in the sense of the government persecuting individuals out of political motive and then mistreating them when they don't toe the party line. What if the I.J. had gone the other way? Would you be able to complain that it compelled your conclusion? Or is it just one of these that the I.J. could have gone either way, depending on? I think the first question asked to Mr. Petuniak's counsel goes to that. Is there evidence in this record of a kleptocracy by Ukraine? And the answer is no. So we would say that the, excuse me. Just following on that, I thought you were going to go to the cat question that was raised. There's no doubt that the I.J. found that he's at risk of being tortured if he goes back to Ukraine, correct? That is absolutely correct. What's his status then? His status is, as Mr. Petuniak's counsel said, that he, well, first that he cannot be removed to Ukraine. That's absolutely forbidden. So he is safe, if you will, from the persecution that he alleged. But that he can remain in the United States if and until the United States finds a country willing to take him, a country in which he would not be harmed. Can he get work? Can he work or do anything here while he's hanging out? It's not a permanent situation, so he does not have authorization. So he just hangs out here. Or until he decides to go to a third country. There's nothing that prevents that at any time. You can disabuse me as maybe it doesn't have any significance, but you've seen more immigration cases than I have, although I've seen an awful lot from a lot of places. This is the first one I've ever, and usually the board affirms the I.J.'s opinion on one-liner. But here we have a dissenting opinion by one of the board members on it. That's the first time I've seen one. And he relies on Ninth Circuit authority. He relies on de Seer, but for the very reasons that we argue de Seer does not stand for the proposition, we don't think he does violence to our position, that there is no doubting that de Seer found a kleptocracy in Haiti. And with a concession that there's no evidence in this record of a kleptocracy in Ukraine, de Seer is not applicable. And the fact that government officials do wrongdoing is not in and of itself enough under the Immigration Nationality Act. I think you're over time. Thank you very much. I'll give you a minute to respond. Thank you, Rana. I would like to bring to this Court's attention the definition of kleptocracy from the Merriam-Webster Collegiate Dictionary, and it states that kleptocracy is a government by those who seek chiefly status and personal gain at the expense of the governed. And I would like to submit that Mr. Pedeniak is one of those citizens who was governed, who represented the new emerging segment of society, the industrious businessman who had the right to protect his business and who had the right to complain in defense of democracy and the equal rights in his country. And also I would like to bring this Court's attention that there is ample evidence in the record that compels the persecution, that the Ukrainian government is such kleptocracy. On page 132 of the administrative record, there's just one of these examples. I'm out of time, so I'm going to limit it to that. Where the government officials who interrogated Mr. Pedeniak, they actually admitted themselves and had no qualms or shame in telling him that, yes, we are the government officials, but we need to live good. And the only way for us to live good, referencing by that, I presume, the changing political system in Ukraine, is we have to do it at the expense of others, referencing Mr. Pedeniak. Thank you very much. Thank you very much, counsel. We appreciate your arguments. The case just argued is submitted. And our next case up, and then we will be having a ten-minute break.
judges: Gibson , Fisher, Callahan